[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15396
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 8, 2011
JOHN LEY
CLERK

D. C. Docket No. 05-00401-CV-3-LAC-MD



LANDMARK AMERICAN INSURANCE COMPANY,
ARCH INSURANCE GROUP,

Plaintiffs-Counter
Defendants-Appellees
Cross-Appellants,


ARCH SPECIALTY INSURANCE COMPANY,

Plaintiff-Appellee,


versus


MOULTON PROPERTIES, INC.,
MOULTON BROTHERS, INC.,
THE MOULTON TRUST,

Defendants-Counter
Claimants-Appellants,
Cross-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

(September 8, 2011)

Before DUBINA, Chief Judge, EDMONDSON and WILSON, Circuit Judges.


PER CURIAM:


This case, involving appeals of summary judgments, is an insurance dispute over a group of properties that were damaged by two hurricanes occurring less than one year apart.

In the time between the two hurricanes, the properties' owners -- Moulton Properties, Inc., Moulton Brothers, Inc., and the Moulton Trust (collectively "the Moultons") -- changed insurers. The question at the center of this appeal is whether the Moultons made misrepresentations to their new insurers -- Landmark American Insurance Company and Arch Specialty Insurance Company (individually, "Landmark" and "Arch"; collectively, "the Insurers") -- about the extent to which damage caused by the first hurricane had been repaired. Because we conclude that issues remain for the district court to consider, we vacate the

2

district court's judgment in part and remand for further proceedings.

## I. BACKGROUND

The Moultons own several properties in and around Pensacola, Florida. In September 2004, some of these properties were damaged by Hurricane Ivan. The Moultons' insurer at the time, St. Paul/Travelers Insurance Company ("St. Paul"), began investigating and processing the claims, but also informed the Moultons that it would not renew their insurance policy after that policy's expiration. The Moultons enlisted their insurance broker, Fisher-Brown, Inc. ("Fisher-Brown"), to secure new coverage. Fisher-Brown, in turn, sought the assistance of Peachtree Special Risk Brokers, LLC ("Peachtree"), an independent wholesale insurance broker, to procure coverage from surplus-line carriers.

Before seeking coverage for the Moultons, Peachtree corresponded with Fisher-Brown to learn certain details about the Moultons' insurance history. Peachtree first asked about the Moultons' five-year loss history and about their current carrier. Fisher-Brown responded that St. Paul was the current carrier, and then explained the Moultons' loss history this way:

> The only property losses would be Ivan and all their properties sustained damage. The damage has been fixed other than cosmetic work

3

on some properties.  Until Ivan their property loss experience was excellent.

Peachtree then asked for the dollar amount of the damage caused by Hurricane Ivan.  A Fisher-Brown employee replied this way:

> We don't have any specific figures.  St. Paul is handling the claim on all the properties (not just what we have submitted to you) and they are still working it out.  When I spoke to the St. Paul underwriter when we were discussing the non-renewal [of the Moultons' coverage,] he did mention that they had reserve set up of 2.2 million for all the properties.

Based in part on this information, Peachtree prepared a Property Summary that it distributed to ten insurers -- including Landmark and Arch -- in June 2005.  The Property Summary specifically addressed the damage that Hurricane Ivan had caused, making this statement: "IVAN -- all repairs have been completed, the total loss (on the master program which includes several buildings that are not on our schedule -- total loss was estimated @ $2.2MM)."

In response to the Property Summary, Landmark sent Peachtree a quote for a primary insurance policy; and Arch sent a quote for an excess policy.  The Moultons purchased both the primary policy and the excess policy; their coverage under these policies began on 1 July 2005.

On 10 July 2005, Hurricane Dennis struck the Pensacola area.  The next day, the Moultons reported hurricane-related damage at the three properties at issue in this appeal.

4

The Insurers sent an independent adjuster to inspect the three properties. This adjuster reported that damage existed at all three properties that had not been caused by Hurricane Dennis, but that was instead unrepaired or partially repaired damage from Hurricane Ivan. Landmark sent the Moultons one letter requesting documentation about their Ivan-related claims and repairs and, then, a second letter indicating Landmark's belief that the Moultons had made misrepresentations about the Ivan-related repairs. The Moultons, through their lawyer, denied Landmark's accusation.

Rejecting the Moultons' denial -- and concluding that the Moultons had made misrepresentations about the Ivan-related damage -- Landmark rescinded the Moultons' coverage in October 2005. Arch did the same in November 2005.

Procedural History. Landmark then filed this lawsuit seeking a declaratory judgment on its right to rescind the policy. Arch intervened and sought similar relief. The Moultons filed several counterclaims, including a counterclaim against the Insurers for breach of contract based on the Insurers' failure to cover the Moultons' losses stemming from Hurricane Dennis.

The Moultons filed a motion for judgment on the Insurers' pleadings and a separate motion for partial summary judgment on the Moultons' counterclaim. The Insurers each responded with their own summary-judgment motions.

The district court rejected all of the Insurers' arguments in support of rescission, including their claim that the Moultons had made misrepresentations during the application process. The court thus granted the Moultons' motion for partial summary judgment to the extent that the court dismissed the Insurers' complaints for declaratory relief.

But the district court also concluded that the Moultons' counterclaim for breach of contract was not ripe because the Insurers should be given an opportunity to administer the Moultons' claims. So, the court granted summary judgment for the Insurers on this breach-of-contract issue and dismissed the Moultons' counterclaim in its entirety. The district court denied the Insurers' motions for summary judgment in all other respects and also denied the Moultons' motion for judgment on the pleadings. The Moultons, Landmark, and Arch then filed these cross-appeals of the district court's summary judgments.[1]

We review the district court's decision on cross-motions for summary judgment de novo, viewing the evidence -- and drawing all factual inferences -- in the light most favorable to the non-moving party. Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005).

---

[1] The Moultons do not appeal the denial of their motion for judgment on the pleadings.

## II.  DISCUSSION

### A.  The Insurers' Motion for Summary Judgment

The Insurers raise three arguments in support of their appeal from the district court's denial of their motions for summary judgment: that the Moultons breached a condition precedent of their insurance contracts; that the Moultons made misrepresentations in the insurance application process; and that the Moultons made additional misrepresentations after obtaining coverage.  We take up these issues in turn.

#### 1.  Breach of a Condition Precedent

The Moultons' contract with Landmark stated -- in what the parties refer to as "Endorsement No. 1" -- that "coverage from this policy is subject to all damage from Hurricane Ivan being completed prior to inception of policy"; and the Moultons' contract with Arch was "subject to the same warranties, terms and conditions" as the Landmark policy.  The Insurers argue that Endorsement No. 1 required the Moultons actually to repair all Ivan-related damage before the

7

inception of their new coverage and that the Moultons breached this condition precedent by failing to repair fully that damage.

The Insurers effectively ask us to read Endorsement No. 1, which requires "all damage" to have been "completed," to instead require that "all repairs" of Ivan-related damage have been "completed." We cannot read the words that way. Under Florida law (which applies to this diversity action), we must construe Endorsement No. 1 in accordance with its plain language. See Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003).[2]

The word "damage" means "[i]njury, harm; . . . physical injury to a thing, such as impairs its value or usefulness." IV OXFORD ENGLISH DICTIONARY 224 (2d ed. 1989). For damage to be complete, then, the impairment of a property's value or usefulness must have been fully and finally inflicted. Damage may not be complete if some ongoing condition remains that continues to impair further a property's value or usefulness: for example (as the district court suggested), an undetected mold that develops in parts of a property after a storm has passed through. But the Insurers have not shown that any such ongoing damage was happening to the Moultons' properties as a result of Hurricane Ivan; and so we

_____

[2] The Insurers do not argue that Endorsement No. 1's language is ambiguous -- and even if it were, this ambiguity would require us to construe the endorsement's language in favor of the Moultons and against the Insurers (who drafted the language). Id.

8

reject the argument that the Ivan-related "damage" was not "complete": the Moultons did not breach Endorsement No. 1.

### 2. Misrepresentations in the Application Process

The Insurers argue that they were entitled to rescind the Moultons' coverage because the Moultons made material misrepresentations during the application process. The Insurers point to communications between Fisher-Brown and Peachtree (in preparation for Peachtree's soliciting insurance for the Moultons), and also to communications between Peachtree and the Insurers, in the form of the Property Summary that Peachtree submitted and that resulted in the Insurers providing coverage for the Moultons.

The district court, in analyzing this issue, considered only whether Fisher-Brown made misrepresentations to Peachtree. The court specifically declined to consider possible misrepresentations in the Property Summary that Peachtree prepared; the court said that the Insurers "do not seriously contend" that Peachtree was an agent for the Moultons.

We conclude the district court erred in this statement. Both of the Insurers

did make that contention before the district court,[3] and they continue to raise that contention on appeal.  So, we must decide whether Peachtree was acting as the Moultons' agent, in which case the representations in the Property Summary prepared by Peachtree would be attributable to the Moultons.

The Moultons argue that an earlier order of the district court,  disposing of several counterclaims the Moultons had filed against the Insurers and against Peachtree (but not the Moultons' breach-of-contract counterclaim that is at issue in this appeal), operates as res judicata to bar the Insurers from arguing that Peachtree was the Moultons' agent.  On the Moultons' counterclaim alleging that Peachtree had negligently conveyed inaccurate information to the Insurers, the district court noted that, although the Moultons alleged that Peachtree acted as an agent for the Insurers, the Moultons had "fail[ed] to identify" any duty of care Peachtree owed to the Moultons.  The court thus dismissed this counterclaim against Peachtree. Having also dismissed the Moultons' other counterclaims against Peachtree, the district court, subsequently and in a separate order, granted Peachtree's motion for entry of final judgment, ending Peachtree's involvement in the case.

According to the Moultons, this entry of final judgment precludes the

<hr>

[3] Landmark argued, to the district court, that the Moultons were wrong to assert that "Peachtree is the agent for Landmark, as opposed to the Moultons"; Landmark argued that Peachtree was an agent for the Moultons.  In the same way, Arch argued, to the district court, that Peachtree's representations should be attributed to the Moultons.

Insurers from arguing that Peachtree was an agent for the Moultons.  We disagree.

Res judicata requires, among other things, that the allegedly preclusive order

involve the same parties (or their privies) as the present action.  Shurick v. Boeing

Co., 623 F.3d 1114, 1116-17 (11th Cir. 2010).  But the district court's order

granting final judgment for Peachtree did not involve the Insurers: that order

disposed only of the Moultons' counterclaims against Peachtree.  Nor have the

Moultons shown that the Insurers are privies of Peachtree.  So, nothing in the order

granting final judgment for Peachtree operates as res judicata to preclude the

Insurers from arguing that Peachtree was the Moultons' agent.[4]

We thus must decide whether Peachtree acted as the Moultons' agent when

it submitted the Property Summary.  Under Florida law, an insurance broker

employed to procure insurance is presumed to act as an agent for the insured unless

"special circumstances" indicate that a different relationship existed.  Essex Ins.

Co. v. Zota, 985 So. 2d 1036, 1046 (Fla. 2008) (internal quotation marks and

citation omitted); Almerico v. RLI Ins. Co., 716 So. 2d 774, 776-77 (Fla. 1998).

---

[4]We also reject the Moultons' argument that, by not appealing the district court's order entering final judgment for Peachtree, the Insurers forfeited the right to argue the issue now. Because the Insurers were not aggrieved by the entry of final judgment for Peachtree, the Insurers had no standing to appeal that order. Wolff v. Cash 4 Titles, 351 F.3d 1348, 1354 (11th Cir. 2003). Also, given that the Insurers could not have appealed the order entering final judgment for Peachtree, we reject the Moultons' reliance on the law-of-the-case doctrine. See United States v. Escobar-Urrego, 110 F.3d 1556, 1560 (11th Cir. 1997) (law-of-the-case doctrine applies where a party attempts to argue a point that was decided at an earlier stage in the litigation and that the party "had the opportunity to appeal" at that time).

So, we begin with the presumption that Peachtree was the Moultons' agent.

The Moultons can rebut this presumption by "presenting some indicia of agency" showing that Peachtree was actually acting as an agent for the Insurers and not for the Moultons. Zota, 985 So. 2d at 1048. The Moultons rely on brokerage contracts between Peachtree and each of the Insurers, but those contracts expressly state that Peachtree was not an agent of either Landmark or Arch. So, these contracts, even when viewed in the light most favorable to the Moultons, do not establish that Peachtree was acting as an agent for the Insurers when Peachtree sought to -- and did -- procure insurance for the Moultons. Nor have the Moultons offered anything else to overcome the presumption that Peachtree was acting as the Moultons' agent. Thus, statements Peachtree made in the Property Summary are attributable to the Moultons.

Because Peachtree was the Moultons' agent, communications between Peachtree and Fisher-Brown -- who, as the district court noted, the parties do not dispute was also an agent for the Moultons -- are not important to the question of whether the Moultons made misrepresentations to the Insurers. Instead, the key issue is whether the Property Summary that Peachtree submitted to the Insurers contained misrepresentations: an issue the district court did not consider. We thus remand for the district court to decide this question in the first instance.

### 3. Post-Coverage Misrepresentations

The Insurers also argue that the Moultons made misrepresentations in the claims process after their coverage with the Insurers began and after Hurricane Dennis struck. The district court concluded that this claim was no basis for summary judgment because the Insurers had not properly pleaded claims of post-coverage misrepresentations.

We agree. Neither Landmark nor Arch, in their complaints for declaratory relief, presented any claim based on alleged post-coverage misrepresentations; instead, both of the Insurers claimed that the Moultons made misrepresentations only during the process of applying for coverage. So, the district court was correct in declining to consider alleged post-coverage misrepresentations.[5]

To summarize, we reject two of the Insurers' arguments in support of their motions for summary judgment: that the Moultons breached Endorsement No. 1 of

---

[5] This point is not to say that the issue of post-coverage misrepresentations is entirely disposed of in this litigation. The Insurers argue -- and the Moultons agree -- that the Insurers pleaded post-coverage misrepresentations as an affirmative defense to the Moultons' counterclaim for breach of contract. So, while post-coverage misrepresentations are no basis for granting summary judgment for the Insurers on their claims for declaratory relief, such misrepresentations might stand as a defense for the Insurers against the Moultons' breach-of-contract counterclaim.

We do not today decide whether the Insurers did, in fact, properly plead post-coverage misrepresentations as an affirmative defense; we note only that the issue may require analysis at some future point, if the Moultons' counterclaim for breach of contract is later considered on the merits.

13

their policies, and that the Moultons made misrepresentations after Hurricane Dennis struck that entitled the Insurers to rescind coverage. But because we conclude that the district court must itself consider whether the Insurers were entitled to rescind coverage based on misrepresentations in the Property Summary, we vacate the denial of summary judgment for the Insurers and remand for the court to consider that issue.

We turn to the Moultons' arguments in support of their own motion for summary judgment.

B.    The Moultons' Counterclaim for Breach of Contract

The Moultons argue that the district court erred in dismissing their counterclaim for breach of contract as not ripe. The basis for the court's ruling was its determination that the Insurers should be given an opportunity to administer the Moultons' insurance claims, in the light of the court's conclusion that the Insurers were not entitled to rescind the Moultons' coverage.[6]

---

[6] The Moultons argue that, by stating that "the parties are positioned to properly administrate the [Moultons'] Hurricane Dennis claim," the district court improperly entered a mandatory injunction that no party had sought. The court did no such thing: at no point did the court order any injunctive relief or otherwise suggest that the parties were equitably bound to administer the Moulton's claims.

14

The district court did not err in dismissing the Moultons' counterclaim as unripe. Because we today remand for the district court to analyze further the issue of whether the Moultons made misrepresentations to the Insurers, it remains unclear now whether the Insurers were ever obligated to administer the Moultons' claims or were instead entitled to rescind the Moultons' coverage. It would be premature to decide the issue of the Insurers' liability under the contract without first deciding whether the Insurers had acted permissibly in rescinding the contract. See, e.g., Pittman v. Cole, 267 F.3d 1269, 1278 (11th Cir. 2001) (noting that "claims are less likely to be considered fit for adjudication when they venture beyond purely legal issues or when they require speculation about contingent future events") (internal quotation marks and citation omitted). So, we affirm the district court's dismissal of the Moultons' counterclaim.[7]

---

[7] A dismissal on ripeness grounds is ordinarily a dismissal without prejudice. See Ga. Advocacy Office, Inc. v. Camp, 172 F.3d 1294, 1299 (11th Cir. 1999). In entering a judgment of dismissal on the Moultons' counterclaim, the district court Clerk of Court stated that the Moultons "shall take nothing further by this action and shall go without day." The Moultons argue that this language connotes a dismissal with prejudice, which -- they say -- would be in error. We understand the dismissal to be without prejudice. The Moultons' worries are misplaced: the phrase "go without day" has no bearing on whether a dismissal is with or without prejudice; this phrase means only that the parties were "finished with legal proceedings without any further settings on the court's calendar." BLACK'S LAW DICTIONARY 760 (9th ed. 2009).

15

## III. CONCLUSION

Because the district court did not consider whether the Insurers were entitled to rescind coverage based on misrepresentations in the Property Summary, we VACATE the court's dismissal of the Insurers' complaints, and its entry of partial summary judgment for the Moultons on the issue of misrepresentations in the Moultons' insurance application; we REMAND for further proceedings. But we AFFIRM the district court's dismissal of the Moultons' counterclaim and also its entry of summary judgment for the Insurers on the issue of the Moultons' counterclaim.

AFFIRMED in part, VACATED in part, and REMANDED.