[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12873
Non-Argument Calendar
_____

D.C. Docket Nos. 1:12-cv-00541-MEF-WC; 1:09-cr-00188-MEF-WC-1

STEVEN MICHAEL CAPSHAW,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(July 16, 2015)

Before HULL, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Steven Michael Capshaw pro se appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate. This appeal involves Capshaw's claims: (1) that his trial counsel was ineffective by not objecting to the admission of certain cellular telephone records; and (2) that his Sixth Amendment right to a public trial was violated when members of the public were prevented from attending voir dire because security officers would not let them enter the courtroom.

After careful review of the record and the parties' briefs, we affirm the district court's order denying Capshaw's § 2255 motion to vacate.

## I. BACKGROUND

The facts of Capshaw's arrest, jury trial, conviction, and sentence are largely covered in this Court's review of that conviction and sentence on direct appeal. See United States v. Capshaw, 440 F. App'x 738, 740-42 (11th Cir. 2011) (unpublished). We review only those facts relevant to this § 2255 appeal.

### A.    The Underlying Offense

After learning that his wife Sandra Capshaw wanted a divorce, Capshaw conceived and attempted to execute a murder-for-hire plot targeting his wife. Id. at 740. The plot involved his sister Karen Whitaker, his niece Nathina Whitaker, and his niece's boyfriend Tate O'Neal. Id. Unfortunately for Capshaw, but fortunately for his wife, Capshaw's niece and her boyfriend were cooperating with police, who had received a tip about the potential murder plot. Id.

2

On October 30, 2009, a magistrate judge issued a warrant for Capshaw's arrest based on a criminal complaint alleging Capshaw's involvement in the murder-for-hire scheme. On November 2, 2009, Capshaw was arrested. An assistant federal public defender, Kevin Butler, was appointed to represent Capshaw. On November 18, 2009, a federal grand jury indicted Capshaw in a one-count indictment charging him with violation of 18 U.S.C. § 1958, the use of a facility of interstate commerce ("to wit: a telephone") with the intent that murder be committed in exchange for a promise of payment.

## B.    Court Order for Cell Phone Records

Following Capshaw's arrest but prior to his indictment, the government applied for a court order, under 18 U.S.C. § 2703, directing various phone companies to disclose the stored telephone communications records for several cell phone numbers, including Capshaw's. In support of its application, the government averred that: (1) Capshaw solicited Nathina Whitaker and Tate O'Neal to kill his estranged wife; and (2) he used his cell phone to make interstate communications with O'Neal and Whitaker in furtherance of this plot. A magistrate judge granted the government's § 2703 application and required the phone companies to produce the cell phone records of Capshaw, O'Neal, Karen Whitaker, and Nathina Whitaker.

3

Before trial, Capshaw's counsel filed a motion to suppress "illegally seized evidence," including documents discovered at Capshaw's residence, but he did not seek to suppress the cell phone records.

At trial, the government introduced Capshaw's cell phone records into evidence. The records were limited to those in September-November 2009, which was the relevant offense period. The government separately introduced the cell phone records for Nathina Whitaker, Capshaw's niece, and Karen Whitaker, Capshaw's sister.[1] The government introduced this evidence to show that Capshaw used his phone, a "facility of interstate commerce," in furtherance of his criminal plot.

## C.    The Voir Dire Proceedings

On April 12, 2010, the district court conducted jury selection. Voir dire commenced at 10:37 a.m. and concluded at 12:23 p.m. Capshaw's counsel was present throughout, and Capshaw was present except for the period from 11:43 a.m. to 12:16 p.m., during which counsel for both sides exercised their peremptory

---

[1]The government did so through the testimony of Jeffrey Strohm, a records custodian for Sprint Nextel Corporation, who testified about incoming and outgoing calls for phone numbers covered by the court orders requiring production by Sprint Nextel, covering the months of September through November 2009. Strohm's testimony shows that the records reflected basic subscriber information, including: (1) the name associated with a particular phone number along with the date range that the phone was active for the subscriber name; (2) the date, time, and duration of the phone calls; (3) the number with which the call occurred; and (4) any cell phone tower used to route the call. While these records contained the cell phone tower numbers for the towers used to route Capshaw's calls, the government did not introduce evidence locating those towers as the prosecution was focused on who Capshaw called and when he called them, rather than on the location of the caller.

4

strikes.  There is no evidence at all in the trial record of the courtroom being closed or of any individual being denied entry to the courtroom during voir dire.  There is not even any mention of this by the district court, the parties, or counsel for the parties.

**D.    Capshaw's Conviction and Sentence**

The jury convicted Capshaw of the charged § 1958 offense.  The district court sentenced him to 120 months' imprisonment.  See 18 U.S.C. § 1958(a).  Capshaw appealed.  On direct appeal, Capshaw did not raise any issue about the alleged denial of access to the courtroom during voir dire.  On September 7, 2011, this Court affirmed his conviction and sentence.  Capshaw, 440 F. App'x at 745.

**E.    Capshaw's § 2255 Motion to Vacate**

On June 19, 2012, Capshaw pro se filed this motion to vacate, pursuant to 28 U.S.C. § 2255.  Capshaw's motion raised 24 separate claims for relief.  Of relevance to this appeal, he argued that his conviction was obtained in violation of the Fourth Amendment because the government acquired his and other individuals' cell phone records from the service provider without securing a warrant.  Capshaw further asserted that his counsel's failure to challenge the admission of these cell phone records deprived him of his right to effective assistance of counsel guaranteed by the Sixth Amendment.

5

On November 26, 2012, Capshaw filed a motion to expand his § 2255 motion, asserting that members of the public were excluded from attending the voir dire phase of his trial. He argued that this closure of proceedings violated his Sixth Amendment right to a public trial. A magistrate judge granted Capshaw leave to amend his § 2255 motion to add this new claim. Accompanying his reply to the government's response brief, Capshaw attached affidavits from these five family members: (1) Patricia Pitts, Capshaw's sister; (2) Norman Capshaw, Capshaw's brother; (3) William Capshaw, also Capshaw's brother; (4) William J. Capshaw, Capshaw's nephew; and (5) Paula Perry, another of Capshaw's sisters.

In substance, the five affidavits are nearly identical. Pitts and Perry aver that, after clearing security in the Dothan, Alabama courthouse, court security personnel required them to wait downstairs in the hallway while jury selection was being conducted in the upstairs courtroom. They aver that they were told that no one was allowed to enter the courtroom until jury selection was completed. They also aver that federal marshals were present at the top of the stairs, allowing only potential jurors into the courtroom. Norman Capshaw, William Capshaw, and William J. Capshaw aver that they attempted to enter the courtroom and were "told by federal marshalls [sic] at the doors that jury selection was closed to the public" and that they would have to wait outside in the hallway until jury selection was

over.  All of these affidavits are dated between the 14th and 24th of December, 2012, more than two-and-a-half years following the trial.

On June 19, 2014, the district court denied Capshaw's § 2255 motion.  On January 6, 2015, this Court granted a certificate of appealability as to the two issues listed above.

## II.  STANDARD OF REVIEW

On a motion to vacate under § 2255, this Court reviews a district court's legal conclusions de novo and its factual findings for clear error.  Devine v. United States, 520 F.3d 1286, 1287 (11th Cir. 2008).  A claim of ineffective assistance of counsel is a mixed question of law and fact that we review de novo.  Id.  We liberally construe pro se filings, including pro se applications for relief pursuant to § 2255.  Winthrop-Redin v. United States, 767 F.3d 1210, 1215 (11th Cir. 2014).  But our review is limited to those issues specified in the COA.  McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).

We review the district court's denial of an evidentiary hearing in a § 2255 proceeding for abuse of discretion.  Winthrop-Redin, 767 F.3d at 1215.

## III.  DISCUSSION

### A.    The Ineffective-Counsel Claim

On appeal, Capshaw argues that his counsel rendered ineffective assistance by failing to object to the admission of cell phone records at trial.  To prevail on an

ineffective-assistance-of-counsel claim, Capshaw must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Capshaw bears the burden of proof on both prongs of an ineffective-counsel claim. Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001). To prove deficient performance, Capshaw must show that counsel's performance fell below an objective standard of reasonableness, as measured by prevailing professional norms. Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc). We need not "address both components of the inquiry if [Capshaw] makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

Capshaw cannot establish that his attorney's performance was deficient for failing to object to the admission of cell phone records. His trial counsel would not have prevailed on such an objection under the governing law, and thus counsel's performance was not deficient for failing to object.

It is undisputed that the government obtained a court order, under 18 U.S.C. § 2703, requiring Sprint Nextel to produce the cell phone records of Capshaw and three other people to show calls between them during the period of the murder-for-hire plot. Obtaining those telephone records through a § 2703 court order did not violate the Fourth Amendment. See Smith v. Maryland, 442 U.S. 735, 743-44, 99

8

S. Ct. 2577, 2582 (1979) (holding that telephone company records of calls made from a defendant's home did not require the government to seek a search warrant).

Capshaw had no reasonable expectation of privacy in these Sprint Nextel records. Regardless of any subjective expectation (about which we have no evidence), it was unreasonable for Capshaw to assume that information about his cell phone calls could not be made available to the government by the third-party telephone company. See id. at 744, 99 S. Ct. at 2582. ("When he used his phone, petitioner voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business."); see also Rehberg v. Paulk, 611 F.3d 828, 843 (11th Cir. 2010) (holding that defendant lacked reasonable expectation of privacy in phone and fax numbers dialed).

At Capshaw's trial, the cell phone records were introduced to show Capshaw's use of a "facility of interstate commerce" in the course of his murder-for-hire plot. The records introduced also contained the assigned numbers of the cell phone towers used to route Capshaw's calls. Capshaw, however, makes no specific argument about historical location information drawn from these tower numbers. This is not surprising, because the government did not seek to admit Capshaw's cell phone records to prove his location, but only to prove he used a cell phone to arrange the murder-for-hire of his wife.

At the time of Capshaw's trial, no Supreme Court or Eleventh Circuit law required the government to seek a search warrant for the cell phone records procured in this case.  Rather, the government was required, by statute, to procure a court order under 18 U.S.C. § 2703.  It did so.  Though not available to Capshaw's counsel at the time, this Court's binding precedent confirms that the claim Capshaw says his counsel should have raised had no merit back in 2011 and has no merit now.  See United States v. Davis, 785 F.3d 498, 513 (11th Cir. 2015) (en banc) ("Following controlling Supreme Court precedent[,]  . . . we hold that the government's obtaining a § 2703(d) court order for production of [a cellular telephone company's] business records . . . did not constitute a search and did not violate the [defendant's] Fourth Amendment rights.").

Thus, counsel was not ineffective for failing to raise this issue.  See Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to argue a meritless claim); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (same).

We recognize that, at trial, the government introduced not only Capshaw's cell phone records, but also the cell phone records of the other individuals to whom Capshaw made calls in furtherance of his murder plot.  The Supreme Court has consistently held that Fourth Amendment rights may not be vicariously asserted. Alderman v. United States, 394 U.S. 165, 174, 89 S. Ct. 961, 966-67 (1969).

10

Capshaw thus lacked the necessary standing to challenge the introduction of the cell phone records of the other individuals.  Assuming Capshaw successfully challenged the introduction of his own cell phone records, the same evidence (demonstrating his use of a telephone in his murder-for-hire plot) was introduced through other means.  Counsel's performance was not deficient for this reason also.

## B.     Public Access to Voir Dire

On appeal, Capshaw also argues that his Sixth Amendment right to a public trial was violated because the courtroom was closed to the public during his jury selection proceedings.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . public trial."  U.S. Const. amend. VI.  The Supreme Court has held that this public-trial right extends to voir dire.  Presley v. Georgia, 558 U.S. 209, 213, 130 S. Ct. 721, 724 (2010).  "The denial of a defendant's Sixth Amendment right to a public trial requires some affirmative act by the trial court meant to exclude persons from the courtroom."  United States v. Al-Smadi, 15 F.3d 153, 155 (10th Cir. 1994); see also United States v. Brazel, 102 F.3d 1120, 1155 (11th Cir. 1997) (examining a district court's affirmative imposition of a requirement that all persons show identification before entering the

11

courtroom and affirming the denial of the defendant's objection to that "partial closure").

Where a district court affirmatively decides to close a trial to the public, the Supreme Court requires the district court to follow procedures to ensure the balancing of interests.  A complete closure of proceedings is only justified where: (1) the party seeking to close the trial advances an overriding interest that is likely to be prejudiced; (2) the closure is no broader than necessary to protect that interest; (3) the trial court has considered reasonable alternatives to closure; and (4) the court makes findings adequate to support the closure.  Waller v. Georgia, 467 U.S. 39, 48, 104 S. Ct. 2210, 2216 (1984).   Where proceedings are only partially closed by the affirmative decision of the district court, the test is less stringent, requiring the court to find only a "substantial," rather than a "compelling," reason to justify a partial closure.  Brazel, 102 F.3d at 1155.

Here, there is no evidence that the alleged exclusion was ordered, known, or ratified by the trial judge.  Indeed, the trial record shows that no party or attorney, much less the trial judge, mentioned or knew about any courtroom closure.  There is not even any allegation that the district court judge affirmatively decided to close voir dire to the public.  To the contrary, the affidavits state that court security personnel refused entry to Capshaw's relatives.  Under the particular factual

12

circumstances of this case, the alleged exclusion of the affiants cannot be imputed to the trial judge. [2]

There was thus no constitutional error by the district court and also no abuse of discretion in the denial of an evidentiary hearing.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's order denying Capshaw's motion to vacate under § 2255.

**AFFIRMED.**

---

[2]Further, Capshaw never raised an objection about the alleged exclusion before adding this claim in the amendment to his § 2255 motion—after his case had passed through the entire direct-review process.  Indeed, Capshaw's claim would already be procedurally defaulted had the government appropriately raised such an argument.  The government did not properly raise procedural default, as it acknowledges, and so we do not consider the late arrival of this claim except insofar as it bore on the ability of the district court to clarify or cure any alleged harm created by the exclusion of Capshaw's family members from the voir dire.