[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10107
_____

D.C. Docket Nos. 8:12-cv-00548-EAK-TBM,
8:09-cr-00571-EAK-TBM-3

WILSON DANIEL WINTHROP-REDIN,

Petitioner - Appellant,

versus

UNITED STATES OF AMERICA,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 23, 2014)

Before HULL, MARCUS and BLACK, Circuit Judges.

MARCUS, Circuit Judge:

For his role as a boat crew member in an international drug-smuggling

operation, Wilson Daniel Winthrop-Redin pled guilty to a federal charge of

conspiracy to possess five kilograms or more of cocaine with the intent to distribute and was sentenced to 168 months in prison. Two years after entering his plea, Winthrop-Redin sought postconviction relief under 28 U.S.C. § 2255, claiming that his plea was coerced by death threats from the boat's captain and that his counsel provided ineffective assistance by instructing him not to report the threats to the district court. We affirm the district court's rejection of the claims without an evidentiary hearing. Because Winthrop-Redin put forward only implausible and conclusory allegations, "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief" without a hearing. 28 U.S.C. § 2255(b); see Aron v. United States, 291 F.3d 708, 715 n.6 (11th Cir. 2002).

## I.

A plea agreement signed by Winthrop-Redin contained the following essential facts. Winthrop-Redin, a Panamanian national, and other codefendants agreed to participate in a maritime drug-smuggling scheme and received advance payment of several thousand dollars. In November 2009, Winthrop-Redin and his codefendants left Panama aboard the St. Vincent-registered Motor Vessel (M/V) Olympiakos bound for Barranquilla, Colombia. In Colombia, the M/V Olympiakos received a load of coal, a "cover load" of legitimate cargo to conceal the smuggling mission. Shortly before the M/V Olympiakos left port, three armed

2

individuals boarded the boat to protect the drug shipment. On December 1, 2009, the M/V Olympiakos met a go-fast boat off the Colombian coast. Ninety bales of cocaine were moved from the go-fast boat to the M/V Olympiakos. The crew of the M/V Olympiakos, including Winthrop-Redin, concealed the cocaine in a hidden compartment. On December 2, 2009, the United States Coast Guard approached, boarded, and inspected the Olympiakos in international waters. The Coast Guard discovered the hidden compartment and seized the ninety bales of cocaine, which weighed over 2,000 kilograms. With the consent of the government of St. Vincent, Winthrop-Redin and his codefendants were brought to the United States, with their first point of entry in the Middle District of Florida. Winthrop-Redin and seven others[1] were indicted on two counts: (1) conspiring to possess with the intent to distribute and to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, 21 U.S.C. § 960(b)(1)(B)(ii); 46 U.S.C. §§ 70503(a), 70506(a)-(b), as well as (2) possessing with intent to distribute five kilograms or more of cocaine on board a vessel subject to the jurisdiction of the United States, 21 U.S.C. § 960(b)(1)(B)(ii); 46 U.S.C. §§ 70503(a), 70506(a).

---

[1] Joffre Alouso Plaza-Arevalo, Javier Enrique Castillo-Romero, Luis Nunez Reyes-Serrano, Clemente Bautista-Silva, Gustavo Adolfo de Poll-Noriega, Paulo Andres Molina-Roja, and Jorge Anres Molina-Molina.

3

Each of the codefendants pled guilty.  Winthrop-Redin entered into a written plea agreement that provided he would plead guilty to conspiracy, the first count of the indictment, in exchange for the dismissal of the second count, possession. Winthrop-Redin initialed each page of the agreement and signed its last page.  In the plea agreement, Winthrop-Redin expressly waived his right to appeal his sentence, except on the grounds that the sentence violated the Eighth Amendment or exceeded the statutory maximum penalty or the applicable Guidelines range determined by the district court.  Section B.8 of the agreement, "Voluntariness," provided that Winthrop-Redin "acknowledges that [he] is entering into this agreement and is pleading guilty freely and voluntarily . . . without threats, force, intimidation, or coercion of any kind."  Petitioner also voluntarily agreed to cooperate fully with the United States in all relevant matters.

Before the plea was accepted, a magistrate judge questioned Winthrop-Redin under oath and at length at a hearing to ensure he pled knowingly and voluntarily.  Among other things, the plea colloquy included the following exchange:

> THE COURT: Mr. Winthrop, has anybody promised you anything other than what is set out in your plea agreement to get you to plead?
>
> MR. WINTHROP-REDIN: No.
>
> THE COURT: Has anybody promised you a particular sentence?
>
> MR. WINTHROP-REDIN: No.

4

THE COURT: Has anybody threatened you or a member of your family in any way to get you to plead?

MR. WINTHROP-REDIN: No.

THE COURT: Do you feel like anybody is forcing you into this decision?

MR. WINTHROP-REDIN: No.

THE COURT: You've been represented here by Mr. Gottfried. Do you have any complaints about anything your lawyer has done?

MR. WINTHROP-REDIN: None.

The magistrate judge concluded that Winthrop-Redin and his codefendants were coherent and understood the allegations and potential punishment, and that a factual basis existed to support the allegations. The court specifically found that none of defendants had been threatened, forced, or coerced into pleading guilty: "From everything that appears to me today, gentlemen, your pleas are being entered freely and voluntarily with an understanding of the consequences and I will so find and recommend the matter proceed to sentencing." Thereafter, the district court accepted the plea and sentenced Winthrop-Redin to 168 months imprisonment to be followed by 60 months of supervised release. That sentence reflected a two-level firearms enhancement related to the possession of firearms by co-conspirators, but Winthrop-Redin received a two-level "safety valve" reduction pursuant to Sentencing Guidelines § 5C1.2 as a less-culpable defendant who

5

agreed to provide information about the offense to law enforcement. See United States v. Brownlee, 204 F.3d 1302, 1304 (11th Cir. 2000).

Winthrop-Redin filed a direct appeal from the final judgment, arguing that the district court erred by denying him a minor role reduction and by imposing the firearms possession enhancement. This Court, however, dismissed the appeal due to the appeal waiver.

In March 2012, more than two years after signing the plea agreement and entering his guilty plea, Winthrop-Redin filed a pro se motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Inter alia, he argued that his plea was involuntarily entered because he and his family received death threats, and that he received ineffective assistance of counsel when deciding to plead guilty.[2] In an affidavit accompanying the motion, Winthrop-Redin said that he had been hired by Alexis Hernandez-Soto, "the captain / chief master" of M/V Olympiakos, for a trip from Panama to Colombia. The United States concedes that Hernandez-Soto was an informant for the Drug Enforcement Administration. According to Winthrop-Redin, after a dispute, Hernandez-Soto ordered the assassination of a Colombian crew member. When Winthrop-Redin confronted him, Hernandez-Soto said that he and his cohorts would kill Winthrop-Redin and his family if he told the

---

[2] Winthrop-Redin also argued that his appeal waiver was entered involuntarily, and that the government breached the plea agreement by recommending a firearm-possession sentencing enhancement but not recommending he receive a downward departure for substantial assistance. The certificate of appealability we issued in this case does not include these claims.

6

authorities or the crew member's family about the murder of the Colombian. Subsequently, Winthrop-Redin said, he was forced to stay in the vessel under death threats. Winthrop-Redin also claimed that Hernandez-Soto and two other crew members working as informants for the United States government "coerc[ed] me to plead guilty under death threats." Notably, however, he did not offer where, when, or why he was coerced to plead guilty. All he said was that he "did not have a choice other than to comply with [Hernandez-Soto's] orders." Winthrop-Redin admitted, as he had to, that he swore under oath at the sentencing hearing that his guilty plea was entered knowingly and voluntarily and that he had not been coerced or threatened to do so. He claimed, nevertheless, at the highest order of abstraction, that he pled out of fear. And he claimed that, but for the threats against him and his family, he would have proceeded to trial.

Winthrop-Redin further claimed that he received ineffective assistance of counsel. He alleged that his attorney advised him not to say anything to the district court or anyone else about Hernandez-Soto having killed the Colombian crew member because doing so would complicate the case. Winthrop-Redin also claimed that, despite his request, his attorney did not contact the Panamanian Consulate to get legal help and did not contact the Colombian Consulate to notify them of the crew member's killing.

7

In response, the United States told the district court that the alleged threats concerning the murder happened on the vessel before Winthrop-Redin was arrested (and before he was charged with anything), and that Winthrop-Redin had not alleged any threats regarding his decision to enter a guilty plea or proceed to trial. Winthrop-Redin replied that "Hernandez-Soto made direct threats to his family and movant while movant was detained ready to proceed to trial." Again notably, Winthrop-Redin did not offer when the threats had been made and did not explain where, how, or why. Winthrop-Redin claimed only that his family told him "that Hernandez-Soto and other cohorts of him were calling them with death threats if movant proceeded to trial or testified in court about the assassination of the crew member."

The district court refused relief because it found that the record showed Winthrop-Redin knowingly and voluntarily entered his guilty plea. The district court noted that Winthrop-Redin's claim that he was directly threatened while he "was detained ready to proceed to trial" was factually impossible: Hernandez-Soto was never charged in the case and thus never detained, and therefore could not have directly threatened Winthrop-Redin to force him to plead guilty. The court also found claims about threats to Winthrop-Redin's family members to be without merit because Hernandez-Soto told the United States about the death on the vessel and had no reason to silence Winthrop-Redin. The district court did not conduct an

8

evidentiary hearing on this or any of Winthrop-Redin's other § 2255 claims, which it also rejected. The court declined to issue a certificate of appealability.

Winthrop-Redin filed a timely notice of appeal, and we granted a certificate of appealability on one issue: "Whether Winthrop-Redin is entitled to an evidentiary hearing on his claim that his guilty plea was not knowing or voluntary due to threats that he received and ineffective assistance of plea counsel."

## II.

We review the district court's denial of an evidentiary hearing in a § 2255 proceeding for abuse of discretion. Aron, 291 F.3d at 714 n.5. "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." Citizens for Police Accountability Political Comm. v. Browning, 572 F.3d 1213, 1216-17 (11th Cir. 2009) (per curiam). We liberally construe pro se filings, including pro se applications for relief pursuant to § 2255. Aron, 291 F.3d at 715; Mederos v. United States, 218 F.3d 1252, 1254 (11th Cir. 2000).

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no

9

relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." Id. § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." Aron, 291 F.3d at 715 (quoting Holmes v. United States, 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A] petitioner need only allege -- not prove -- reasonably specific, non-conclusory facts that, if true, would entitle him to relief." Id. at 715 n.6. However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." Holmes, 876 F.2d at 1553 (quoting Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979)[3]); see, e.g., Lynn v. United States, 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the . . . affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion.").

"A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." Machibroda v. United States, 368 U.S. 487, 493 (1962). At the same time, plea bargaining retains its benefits of certainty and efficiency "only

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

if dispositions by guilty plea are accorded a great measure of finality." Blackledge v. Allison, 431 U.S. 63, 71 (1977); see id. ("To allow indiscriminate hearings in federal postconviction proceedings . . . for federal prisoners under 28 U.S.C. § 2255 . . . would eliminate the chief virtues of the plea system -- speed, economy, and finality."). While § 2255 exists "to safeguard a person's freedom from detention in violation of constitutional guarantees," the Court observed that "[m]ore often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea." Id. at 71-72. As a result, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Id. at 73-74; see id. at 80 n.19 (explaining that if the record reflects the procedures of plea negotiation and includes a verbatim transcript of the plea colloquy, a petitioner challenging his plea will be entitled to an evidentiary hearing "only in the most extraordinary circumstances"). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Id. at 74.

The district court did not abuse its considerable discretion in declining to hold a § 2255(b) evidentiary hearing because Winthrop-Redin's involuntary plea claim is based only on conclusory and incredible allegations. We say so for a

11

number of reasons.  For starters, the record contains powerful evidence from Winthrop-Redin himself indicating that his guilty plea was knowing and voluntary. Winthrop-Redin initialed and signed the plea agreement, which specified that he had decided to plead knowingly and voluntarily, without threats, force, intimidation, or coercion.  Winthrop-Redin then testified under oath and in detail that his plea had not been induced by threats or force leveled against him or his family.  See Fed. R. Crim. P. 11(b)(2) ("Before accepting a plea of guilty . . . , the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force [or] threats . . . .").  Such "[s]olemn declarations in open court carry a strong presumption of verity."  Blackledge, 431 U.S. at 74; accord United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("While Rule 11 is not insurmountable, there is a strong presumption that the statements made during the colloquy are true.").  Indeed, because Winthrop-Redin made statements under oath at a plea colloquy, "he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) (per curiam).

In the second place, Winthrop-Redin waited more than two years after he pled guilty, and only after all other avenues for relief from his sentence were exhausted, to say anything to the district court about alleged threats.  Then, to counter his "directly inconsistent former testimony," Winthrop-Redin "tendered

12

only his own affidavit." Bryan v. United States, 492 F.2d 775, 779-80 (5th Cir. 1974) (en banc). The former Fifth Circuit noted in dicta that "the allegations of [a § 2255] petitioner accompanied by his own affidavit are insufficient to mandate an evidentiary hearing in the face of a Rule 11 record detailing statements by the petitioner that his plea was not induced by any threats or coercion." Matthews v. United States, 533 F.2d 900, 902 (5th Cir. 1976). While this clear-cut principle does not bind our decision because, in prior precedent, the Fifth Circuit explained that under § 2255(b) "[n]o per se rule can be applied, for in the final analysis, the issue becomes one of fact," it does inform our analysis. Bryan, 492 F.2d at 778; see United States v. Vega-Castillo, 540 F.3d 1235, 1236 (11th Cir. 2008) (per curiam) ("Under the prior precedent rule, we are bound to follow a prior binding precedent 'unless and until it is overruled by this court en banc or by the Supreme Court.'" (quoting United States v. Brown, 342 F.3d 1245, 1246 (11th Cir. 2003))). The fact that Winthrop-Redin presented only his own affidavit bears on whether the record conclusively shows he is entitled to no relief. See Bryan, 492 F.2d at 780 (warning against a system where "the number of hearings which a wilful affiant could provoke as to a single conviction would be limitless, for each time he could swear that someone at the last preceding hearing suborned false testimony from him"). In addition, we observe that Winthrop-Redin nowhere alleged what evidence he intended to adduce at an evidentiary hearing. The district court is

13

entitled to discredit a defendant's newly-minted story about being threatened when that story is supported only by the defendant's conclusory statements.

Moreover, Winthrop-Redin did not put forward "specific and detailed factual assertions" that, if true, would entitle him to relief. Id. at 779. Winthrop-Redin's affidavit states that Hernandez-Soto ordered the killing of a crew member and threatened Winthrop-Redin not to say anything about the murder. But Winthrop-Redin was charged with, and pled guilty to, conspiracy to possess cocaine with the intent to distribute, not murder. Winthrop-Redin's allegations in no way connect the threats concerning disclosure of the killing with the decision to plead guilty, which occurred substantially later in time. As a result, even if it were true that Hernandez-Soto told Winthrop-Redin to say nothing about the murder, that fact would not establish that the guilty plea on the drug conspiracy charge was involuntary. If anything, pleading guilty, which required Winthrop-Redin to tell the government and the district court about the smuggling operation and all related matters, created far more risk of divulging details about the alleged murder than proceeding to trial. After all, in the plea agreement Winthrop-Redin "agree[d] to cooperate fully with the United States," to testify "fully and truthfully" in any federal court proceeding connected with "the charges in this case and other matters," and to make "a full and complete disclosure of all relevant information." Winthrop-Redin does not explain how Hernandez-Soto's alleged command not to

14

divulge the murder coerced him into entering a plea agreement that involved cooperating <u>with</u> the government and disclosing all relevant facts.

Besides the threats tied to the crew member killing, Winthrop-Redin puts forward no specific facts in support of his conclusory claim that he "was intimidated and coerced into pleading guilty by codefendants in my case who threatened to kill me and my family members."  Notably, he does not offer how Hernandez-Soto conveyed threats urging him to plead guilty, when, where, or how often they were made, or even why Hernandez-Soto wanted him to plead.  He argues nevertheless that his allegations are sufficiently specific for a hearing because they include "(1) the naming, or description, of persons involved; (2) an account of the relevant acts or conduct of such persons; (3) an account of the time and place where such acts or conduct took place; and (4) a statement of how such acts or conduct prejudiced the petitioner."  <u>Diamond v. United States</u>, 432 F.2d 35, 40 (9th Cir. 1970).  But Winthrop-Redin flunks his own test.  He offers no account of the time, place, or acts involved in the threats he says pressured him into a guilty plea.  Alone, the conclusory assertion that he pled guilty because of death threats from Hernandez-Soto is not enough to warrant a § 2255 hearing in the face of this full record, including Winthrop-Redin's prior testimony that he pled guilty

15

knowingly and voluntarily.[4]  The district court was not required to allow a fishing-expedition based only on Winthrop-Redin's incredible allegations.  See Machibroda, 368 U.S. at 495 ("The language of [§ 2255(b)] does not strip the district courts of all discretion to exercise their common sense.").

Winthrop-Redin also alleges in his affidavit that he told his attorney that he wanted to tell the district court about the threats from Hernandez-Soto, but that "counsel misadvised [him] not to say anything about it to the judge, the prosecutor, or anyone else and that is was better to keep it that way or things would get much more complicated in the case."  On appeal, Winthrop-Redin argues that he is entitled to an evidentiary hearing on his claim that counsel was ineffective for advising him not to tell the district court about the threats and for allowing him to plead guilty under duress.

"During plea negotiations defendants are 'entitled to the effective assistance of counsel.'"  Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).  To establish ineffective assistance, a defendant must show deficient performance and prejudice.  Strickland v.

---

[4] In an unverified Reply filed in support of his motion, Winthrop-Redin claimed that his family told him "that Hernandez-Soto and other cohorts of him were calling them with death threats if movant proceeded to trial or testified in court about the assassination of the crew member." Winthrop-Redin does not argue on appeal that statements in the Reply entitle him to a hearing. And the Reply still fails to allege specific facts.  It does not describe which "other cohorts" conveyed the threats, how many times they did so, when the threats were made, which family members received them, what the threatening parties actually said, or why Hernandez-Soto and "other cohorts" wanted him to plead guilty.

16

Washington, 466 U.S. 668, 687 (1984).  On the first prong, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Id. at 690.  To establish prejudice, a defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  Where, as here, the petitioner challenges his guilty plea based on his counsel's alleged deficient performance, he can show prejudice only if "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Winthrop-Redin is not entitled to a § 2255(b) evidentiary hearing because he does not specifically allege that he told his attorney he had been threatened with death unless he pled guilty.  Instead, as he explained in his district court Memorandum of Law, Winthrop-Redin claimed that he told his attorney "the details of how Hernandez-Soto ha[d] killed the Colombian crew member in the vessel and that he had threatened to kill movant and his family if he did not keep his mouth shot [sic]."  Even if this allegation were true, Winthrop-Redin would not be entitled to relief.  We cannot say that counsel would have exceeded the bounds of reasonable professional judgment by advising a client not to tell the judge about

17

a separate incident unconnected to the client's decision to plead guilty. Moreover, as the government points out, counsel's alleged advice might even have protected his client's interests. If the district court considered murder of the crew member to be reasonably foreseeable relevant conduct, the court could have increased Winthrop-Redin's sentencing level under the Guidelines. See U.S. Sentencing Guidelines Manual §§ 2A1.1(a), 2D1.1(d)(1) (2009). Nor did Winthrop-Redin allege prejudice sufficient to warrant a hearing because he did not claim in his § 2255 motion or his supporting affidavit that his decision to plead guilty was affected by his attorney's advice not to tell the judge about threats related to the crew member's murder.[5]

Finally, Winthrop-Redin claims that his counsel was deficient for failing to contact the Consulates of Panama and Colombia to inform them of the crew member's murder and to obtain legal assistance. But Winthrop-Redin does not say what help, if any, the Consulates could have provided. He certainly does not allege that the failure to contact them had any effect on his decision to plead guilty.

---

[5] In his district court Reply, Winthrop-Redin first stated that "[h]ad counsel rendered an undivided and loyal defense to movant, movant would have testified in camera about the assassination case, he would have proceeded to trial and he would have never pleaded guilty . . . ." Again, Winthrop-Redin does not argue on appeal that statements made for the first time in the Reply entitle him to a hearing. And even if Winthrop-Redin had properly presented it to the district court, the conclusory allegation would not warrant a hearing. Winthrop-Redin still alleges no specific facts connecting his attorney's advice about the death of the crew member with the decision to plead guilty.

18

Without specific allegations supporting his <u>Strickland</u> claim, Winthrop-Redin is

not entitled to a § 2255(b) evidentiary hearing.

**AFFIRMED.**