[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12246
Non-Argument Calendar

_____

D.C. Docket Nos. 1:13-cv-03120-AT,
1:11-cr-00085-AT-JFK-5

HOWARD LEVY,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 6, 2016)

Before TJOFLAT, WILLIAM PRYOR, and MARTIN, Circuit Judges.

PER CURIAM:

Howard Levy, a federal prisoner, appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate his conviction and sentence. After careful review, we affirm the district court.

I.

In 2011, Levy and several co-defendants were indicted based on a bank fraud scheme. Levy was indicted for: (1) one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349 ("Count One"); (2) six counts of fraud with identification documents in violation of 18 U.S.C. §§ 2 and 1028A(a)(1); and (3) five counts of bank fraud in violation of 18 U.S.C. §§ 2 and 1344.

Levy pleaded guilty to Count One pursuant to a written plea agreement. His plea agreement contained a section stipulating that the effect of his conviction on his immigration status was uncertain, but that deportation was "presumptively mandatory." This section affirmed that Levy "want[ed] to plead guilty" even if it resulted in his "automatic removal." The agreement also contained an appeal waiver allowing him to appeal only if the government did so or if the district court imposed an upward departure from his sentencing guidelines range. At the bottom of the agreement was an acknowledgment, signed by Levy indicating he had carefully reviewed the agreement with defense counsel and understood its terms and conditions.

2

At his change-of-plea hearing, Levy said (under oath) that he understood the plea agreement and the acknowledgment.  The court asked Levy if he had discussed the immigration consequences of his plea with defense counsel, and he responded that he had not spoken with an immigration lawyer but had discussed the issue briefly with defense counsel.  Counsel then stated that he told Levy there were "possible immigration consequences" and had advised him to consult with a specialist because "one day that will become an issue."  The court inquired further, and counsel confirmed he had advised Levy "that he may face deportation."  The court then took a short recess to give Levy and defense counsel more time to discuss the immigration consequences of Levy's guilty plea.  After the break, Levy confirmed that he had been given sufficient time to discuss the immigration issues with defense counsel and said he still wanted to plead guilty.

At Levy's sentencing hearing, defense counsel requested probation in lieu of imprisonment.  The court denied this request and sentenced Levy to twenty months in prison, which was below his sentencing guidelines range.  The court also ordered him to pay over $200,000 in restitution.  Immediately after this hearing, Levy and defense counsel had a brief conversation.  Counsel later testified that during this conversation, he told Levy there was no basis to appeal the sentence.

Levy then brought this § 2255 action.  He alleged that defense counsel provided ineffective assistance of counsel in three ways: (1) counsel explained the

elements of the wrong crime to Levy; (2) counsel failed to adequately advise Levy

regarding the immigration consequences of Levy's guilty plea; and (3) counsel

failed to file an appeal despite Levy's instructions to do so.  A Magistrate Judge

ordered an evidentiary hearing for the third ground only.  At this evidentiary

hearing, Levy testified that during their brief conversation immediately after the

sentencing hearing, he told defense counsel he wanted to appeal his sentence

because he was not happy with the amount of restitution he had been ordered to

pay.  On the other hand, defense counsel testified that when he told Levy he

believed there was no basis to appeal, Levy responded not by asking him to appeal,

but rather by shrugging and saying "okay."  Further, counsel testified that Levy

sent him an email two months after the sentencing hearing asking when and how

Levy would pay the restitution, and even in that email, Levy did not ask him to

appeal anything.

In January 2015, the Magistrate Judge issued a report and recommendation

denying Levy relief on all three grounds.  As relevant to this appeal, the Magistrate

Judge ruled that defense counsel provided constitutionally adequate advice about

the immigration consequences of Levy's guilty plea and in any case, Levy could

not show he was prejudiced because his plea agreement said he wanted to plead

guilty even if the consequence was automatic removal.  The Magistrate Judge also

found Levy's testimony at the evidentiary hearing was not credible because of a

4

number of inconsistencies with earlier testimony. Thus, the Magistrate Judge credited defense counsel's testimony that Levy did not ask him to file an appeal and did not reasonably demonstrate an interest in appealing.

Over Levy's objections, the district court adopted the Magistrate Judge's report and recommendation. In its order, the district court highlighted the inconsistencies in Levy's testimony as "more than minor" and noted the "record of inconsistencies is further weighted" by the fact that the Magistrate Judge made her credibility determinations after personally observing Levy and defense counsel at the evidentiary hearing.

## II.

Levy makes two arguments on appeal. First, he argues the district court should have held an evidentiary hearing on the issue of whether defense counsel was ineffective for failing to adequately advise him of the immigration consequences of pleading guilty. Levy acknowledges that the record reflects defense counsel told him he might be deported as a result of his plea. However, he asserts this advice was deficient because it failed to make clear he would face automatic deportation if he could not establish citizenship through a family member. Further, Levy argues he would have refused the plea deal—and would have been willing to risk longer incarceration—if he had been told his ability to remain in the United States rested entirely upon this citizenship claim.

5

We review the district court's denial of an evidentiary hearing in a § 2255 proceeding for abuse of discretion. Winthrop-Redin v. United States, 767 F.3d 1210, 1215 (11th Cir. 2014). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." Id. (quotation omitted).

In order to get an evidentiary hearing, a § 2255 petitioner need only allege, not prove, "reasonably specific, non-conclusory facts that, if true, would entitle him to relief." Id. at 1216 (quotation omitted). However, the district court does not need to grant a hearing if the petitioner's allegations are "patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record." Id. (quotations omitted). Put another way, the district court must grant an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief." Id. (quotation omitted).

To secure relief on the theory that defense counsel's constitutionally deficient advice induced a guilty plea, a petitioner must show that the advice "fell below an objective standard of reasonableness," Hill v. Lockhart, 474 U.S. 52, 57, 106 S. Ct. 366, 369 (1985) (quotation omitted), and that "the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, 566

U.S. ___, 132 S. Ct. 1376, 1384 (2012).  In other words, the petitioner must show not only that defense counsel committed professional error, but also a reasonable probability that, but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial.  See Premo v. Moore, 562 U.S. 115, 131–32, 131 S. Ct. 733, 745 (2011).  So when a § 2255 petitioner seeks relief under this theory, the district court may deny the petitioner an evidentiary hearing if his § 2255 motion or the record conclusively shows he cannot meet his burden under one of these two prongs.  See Winthrop-Redin, 767 F.3d at 1216.

In this case, the record conclusively shows that Levy cannot meet his burden under the second prong.  He cannot demonstrate a reasonable probability that, but for defense counsel's erroneous immigration advice, he would have insisted on going to trial.  Levy's plea agreement specifically included a section stating: (1) removal was presumptively mandatory because he was pleading guilty to the offense; (2) he understood that neither his attorney nor the district court could predict the effect of his plea on his immigration status; and (3) he wanted to plead guilty even if it resulted in his automatic removal from the United States.  Further, Levy signed an acknowledgement at the end of the plea agreement stating that he had read and carefully reviewed every part of the agreement with defense counsel and understood its terms and conditions.  Finally, at his change-of-plea hearing, Levy said under oath that he understood the plea agreement and the

acknowledgment.  Because he stated in a signed plea agreement that he wanted to plead guilty even if the consequence was automatic removal, Levy cannot demonstrate he would have refused to plead guilty if counsel had told him he could face automatic removal.  Thus, the district court did not abuse its discretion by denying Levy's claim regarding defense counsel's immigration advice without granting Levy an evidentiary hearing.

### III.

Levy's second argument has two parts.  First, he argues the district court clearly erred in finding he did not ask defense counsel to appeal.  Second, he asserts the district court erred in ruling defense counsel was not ineffective for failing to adequately consult him about filing an appeal.

In a § 2255 proceeding, we review a district court's legal conclusions de novo.  Devine v. United States, 520 F.3d 1286, 1287 (11th Cir. 2008).  Whether counsel was ineffective is a mixed question of law and fact that we review de novo.  Id.  "We allot substantial deference to the factfinder in reaching credibility determinations with respect to witness testimony," so we review credibility determinations for clear error only.  Id. (quotation and ellipsis omitted).

In judging whether a lawyer's performance was constitutionally deficient, we apply the two-prong test established by Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  First, we must determine whether the lawyer's

performance was reasonable under prevailing professional norms.  Id. at 688, 104

S. Ct. at 2065.  The petitioner must prove by a preponderance of the evidence that

his counsel's performance was unreasonable.  Putman v. Head, 268 F.3d 1223,

1243 (11th Cir. 2001).  Second, we must determine whether the lawyer's deficient

performance was prejudicial.  In order to satisfy the prejudice prong, the petitioner

"must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."

Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.  "A reasonable probability is a

probability sufficient to undermine confidence in the outcome."  Id.  We must

consider the totality of the evidence before the factfinder in making this prejudice

determination.  See id. at 695, 104 S. Ct. at 2069.

The Strickland test applies to claims of ineffective assistance based on

counsel's failure to file an appeal.  Roe v. Flores-Ortega, 528 U.S. 470, 476-77,

120 S. Ct. 1029, 1034 (2000).  Counsel acts in a constitutionally unreasonable

manner when he "disregards specific instructions from [a] defendant to file a

notice of appeal."  Id. at 477, 120 S. Ct. at 1035.  When this happens, we presume

the defendant was prejudiced even if he signed an appeal waiver as part of his plea

agreement.  Gomez-Diaz v. United States, 433 F.3d 788, 790 (11th Cir. 2005).

Even when a defendant does not give specific instructions to appeal, his

attorney has a constitutional duty to consult with him about an appeal if (1) "a

9

rational defendant would want to appeal," or (2) the "particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480, 120 S. Ct. at 1036.  In determining whether a lawyer had a duty to consult his client about an appeal, we "must take into account all the information counsel knew or should have known." Id.  Further, one "highly relevant factor" is whether the defendant pleaded guilty, "both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id.

With regard to Levy's claim that the district court clearly erred in finding he never asked defense counsel to appeal, we conclude to the contrary.  The district court determined that Levy lacked credibility based on multiple "more than minor" inconsistencies between his evidentiary-hearing testimony before the Magistrate Judge and his earlier testimony.  In contrast, there did not appear to be any inconsistencies in defense counsel's testimony.  In light of the substantial deference we give to factfinders on issues of witness credibility, we cannot say the district court clearly erred in crediting defense counsel's testimony that Levy never gave him specific instructions to appeal.

Further, Levy's argument that defense counsel was ineffective for failing to adequately consult him about an appeal fails because Levy cannot show defense counsel was under a duty to consult.  First, he has not demonstrated that a rational

defendant in his position would have wanted to appeal. Levy signed a plea agreement containing an appeal waiver, which allowed him to appeal only if the government did so or if the district court imposed an upward departure from his sentencing guidelines range. Because neither of these things happened, a rational defendant in Levy's shoes would not have sought to appeal. See Otero v. United States, 499 F.3d 1267, 1271 (11th Cir. 2007) (per curiam) ("[O]n account of the plea agreement's broad appeal waiver, any appeal taken by Otero would have been frivolous and would have been an appeal that no rational defendant would have taken."). Levy also received a prison sentence below his guideline range and favorable plea agreement in which the government agreed not to prosecute him on eleven counts. Thus, Levy failed to show that a rational defendant would have wanted to appeal.

Second, the district court did not clearly err in finding that Levy did not reasonably demonstrate an interest in appealing his sentence. Once again, in light of the contrast between Levy's testimony at his § 2255 hearing and his testimony at the time he entered his plea, the district court found Levy's later testimony was not credible. The district court therefore accepted defense counsel's testimony that Levy responded to counsel's advice that there were no issues to appeal by saying "okay" and shrugging his shoulders, and that Levy never led counsel to believe Levy wanted to appeal. On appeal, Levy argues he was clearly upset by his

sentence and was concerned about its effect on his immigration status.  Even accepting these allegations as true, they are not enough to show the district court's finding, and the credibility determinations upon which it was based, were clearly erroneous.

**AFFIRMED.**