[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14399
_____

D.C. Docket Nos. 8:13-cv-01342-VMC-AEP,
8:10-cr-00305-T-33-AEP

ROBERT MARTIN,

Petitioner - Appellant,

versus

UNITED STATES OF AMERICA,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 9, 2017)

Before TJOFLAT, and ROSENBAUM, and SENTELLE,[*] Circuit Judges.


PER CURIAM:

_____

[*] Honorable David Bryan Sentelle, United States Circuit Judge for the District of Columbia, sitting by designation.

## I.

Appellant Robert Martin is a federal prisoner currently serving his sentence after pleading guilty to drug and firearm charges. Following sentencing, Martin filed a motion pursuant to 28 U.S.C. § 2255 to vacate his sentence. In his § 2255 motion, Martin contended that his trial counsel was ineffective for advising him to withdraw his original guilty plea, which limited his sentencing exposure, and to instead pursue a motion to suppress on the basis that the pertinent search warrant was constitutionally defective. According to Martin, his counsel essentially guaranteed to Martin that he would prevail on the motion to suppress. But Martin was unsuccessful on the motion to suppress, ended up accepting a less-favorable plea agreement, and is now serving 188 months in prison.

The sole issue on appeal is whether the district court erred in denying Martin's § 2255 motion without holding an evidentiary hearing to determine the nature of the advice Martin's counsel gave to Martin about withdrawing his first guilty plea. Because the record affirmatively contradicts the allegations set forth in the § 2255 motion and because the record conclusively demonstrates that Martin would not have prevailed on his § 2255 motion, we conclude the district court did not err when it declined to hold an evidentiary hearing. Accordingly, we affirm.

## II.

A.    *Martin's Conviction*

2

Martin was charged in a three-count indictment with distributing at least 500 grams of methamphetamine, possessing a firearm after having been previously convicted of a felony, and possessing methamphetamine. During the criminal proceedings, Martin's then-counsel filed a motion to suppress, arguing that the search warrant leading to discovery of the drugs and firearm was invalid because, among other things, it was not signed by a magistrate judge.

Shortly after filing the motion to suppress, counsel was able to secure a plea deal for Martin through which Martin would plead guilty to the firearm offense and limit his exposure to a maximum ten-year sentence. Martin signed the plea agreement, which provided for the dismissal of the two drug counts.

At Martin's change-of-plea hearing, he asked for a continuance to retain new counsel, Tom Ostrander. Ostrander, who was present, stated that the intent was not to "throw away the opportunity to plead but simply to allow . . . me to get up to speed." The district court granted the continuance and rescheduled the change-of-plea hearing.

But when Martin appeared at the continued hearing, he informed the magistrate judge that he no longer wished to plead guilty. Instead, he explained, he wanted to proceed with the pending motion to suppress.

The government voiced its surprise and opined that Martin could be "very dissatisfied" with what happens if he did not prevail on the motion to suppress.

Based on Martin's prior criminal history, the government announced that Martin would face a potential mandatory life sentence.

The magistrate judge likewise emphasized the significance and potential danger of moving forward with the motion to suppress. Martin indicated that he understood the risk associated with backing out of the plea agreement, but was firm in his desire to proceed.

A few weeks later, after holding an evidentiary hearing, the magistrate judge issued a report and recommendation ("R&R") recommending that the motion to suppress be denied. Although the magistrate judge recognized that the search warrant was missing the signature of the issuing judge, he found the warrant to be valid because other evidence established that the issuing judge had, in fact, issued the warrant in conformity with the Fourth Amendment.[1] The R&R concluded that the issuing judge had, through an oversight, simply failed to include her signature on the appropriate section of the warrant. Martin did not file an objection to the R&R, and the district court ultimately denied the motion to suppress.

Following the denial of the motion to suppress, Martin again changed course and decided to plead guilty to the felon-in-possession count and the distribution-of-

---

[1] Specifically, the magistrate judge noted that the issuing judge (1) orally approved the search warrant after finding probable cause to authorize the warrant; (2) stated that she reviewed the entire warrant-application package; and (3) made handwritten notations on the warrant application and the warrant itself, evidencing her consideration of the search warrant. The magistrate judge also determined that the search warrant sufficiently incorporated language from the application package to meet the Fourth Amendment's particularity requirement.

4

methamphetamine count.  During the change-of-plea hearing, the district court noted that it was Martin's second plea agreement and confirmed that Martin understood that he faced a sentence of imprisonment from ten years to life for the drug offense.  The court also asked Martin if his counsel, Ostrander, had done anything in an unsatisfactory manner, to which Martin replied, "No, Sir."  Martin indicated that he was "fully satisfied with the advice and representation [he had] received in [the] case."

The district court accepted Martin's second plea and held a sentencing hearing.  During the hearing, attorney Ostrander requested that Martin receive a ten-year sentence and spoke about the propriety of the motion to suppress.  He argued that the motion to suppress was well-founded because no appellate court had yet found that an unsigned search warrant was valid under the Fourth Amendment.  Ostrander also noted that he "could not tell [Martin] to withdraw the [original] plea. . . . But [Martin] went forward [with the motion to suppress] because it had been sold to him that—that the search warrant was bad."  The district court denied Martin's request for a ten-year sentence and imposed a sentence of 188 months' imprisonment as to Count I and 120 months' imprisonment as to Count II, with the sentences to run concurrently.

**B.**    *Martin's § 2255 Motion*

5

Soon after the district court handed down its sentence, Martin filed his § 2255 motion seeking to vacate, set aside, or correct his sentence. Martin argued that Ostrander had been ineffective since he had advised Martin to withdraw his guilty plea and litigate the motion to suppress because the search warrant was unsigned and unenforceable. Under this recommendation, Martin withdrew his original plea. Martin argued that Ostrander's performance was deficient because "any competent attorney in criminal law would [have] known the 'Good Faith Exception'" would have resulted in the denial of the suppression motion. Martin further asserted that Ostrander's recommendation to file a motion to suppress prejudiced Martin because he ultimately pled guilty to an agreement that required a longer sentence. According to Martin, he would not have withdrawn the original plea had he been properly advised by Ostrander.

Attached to Martin's § 2255 motion were three nearly identical affidavits filed by friends of Martin who attested to the fact that they had "diligently followed [Martin's] case throughout all of the proceedings." The affidavits stated that Martin was advised by his previous attorney that the case "should be dismissed" due to the lack of an endorsing signature on the search warrant.

The district court determined that an evidentiary hearing was not necessary for the adjudication of Martin's § 2255 motion. After reviewing the record, the district court denied the motion, concluding that Martin made the decision to

6

withdraw his initial plea agreement "with full knowledge of the ramifications of his decision." The court recounted the warnings issued by the government during various hearings and found that Martin "cannot demonstrate that he rejected the initial plea agreement based on his attorney's failure to advise him." The district court also concluded that nothing in the record suggested that the motion to suppress was frivolous or unsupported. So Martin was not able to demonstrate that Ostrander's performance was deficient under *Strickland v. Washington*. And the court found that when Martin walked away from the first plea agreement, he was "equipped with the knowledge that he potentially faced a sentence of life imprisonment." Thus, the court concluded Martin had failed to sustain *Strickland*'s prejudice prong. The district court declined to grant a certificate of appealability ("COA") because it found that Martin had failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. §2253(c)(2).

## C.   *Martin's Appeal*

Martin appealed the denial of his § 2255 motion proceeding *pro se*. After considering Martin's appeal, this Court granted a COA on the following issue:

> Whether the district court erred in denying Martin's claim of ineffective assistance of counsel without holding an evidentiary hearing to determine the nature of the advice given to Martin by counsel with regard to whether to withdraw his first guilty plea.

Martin filed a *pro se* Initial Brief, but after this Court appointed counsel to represent Martin, his counsel filed a replacement brief. On appeal, Martin asserts that the district court erred in denying his § 2255 motion without conducting an evidentiary hearing because the record did not conclusively establish that he was not entitled to relief based on his claim that Ostrander rendered ineffective assistance of counsel.

## III.

We review for abuse of discretion a district court's denial of an evidentiary hearing in the context of a § 2255 motion. *Aron v. United States*, 291 F.3d 708, 714 n.5 (11th Cir. 2002). A district court abuses its discretion if it "applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215 (11th Cir. 2014) (citation omitted). In reviewing the denial, we liberally construe *pro se* filings, including *pro se* applications for relief pursuant to § 2255. *Aron,* 291 F.3d at 715; *Mederos v. United States,* 218 F.3d 1252, 1254 (11th Cir. 2000).

## IV.

A criminal defendant like Martin who files a § 2255 motion is entitled to an evidentiary hearing in the district court "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ."

28 U.S.C. § 2255(b);[2] *Aron*, 291 F.3d at 714.  If the petitioner "alleges facts that, if true, would entitle him to relief," he must receive an evidentiary hearing so the district court can rule on the merits of his claim.  *Winthrop-Redin*, 767 F.3d at 1216 (quoting *Aron*, 291 F.3d at 715).  A petitioner need not prove his allegations until an evidentiary hearing is held.  *Aron*, 291 F.3d at 715 n.6.

But § 2255(b) does not require that a district court hold an evidentiary hearing every time a petitioner asserts a claim of ineffective assistance of counsel.  *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989).  A district court need not hold an evidentiary hearing where the movant's allegations are "patently frivolous" or where they are based upon "unsupported generalizations."  *Winthrop-Redin*, 767 F.3d at 1216 (citations and internal quotation marks omitted).  An evidentiary hearing is also not required where the petitioner's allegations are "affirmatively contradicted by the record." *Id.* (citing *Holmes*, 876 F.2d at 1553).

Based on this standard, we must determine whether Martin set forth sufficient facts in his § 2255 motion that, if taken as true, would entitle him to relief for his ineffective-assistance-of-counsel claim.  In doing so, we do not decide

---

[2] 28 U.S.C. § 2255(b) provides, in relevant part, as follows:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

whether Martin's counsel was actually deficient in his performance, but rather, whether the allegations, taken in the light most favorable to Martin, support his § 2255 motion.    We must also consider whether Martin's allegations are affirmatively contradicted by the record.    Ultimately, we find that an evidentiary hearing was not necessary in this case because the record affirmatively contradicts the allegations set forth in Martin's § 2255 motion and because the record conclusively demonstrates that Martin would not have prevailed on his ineffective-assistance-of-counsel claim.

## A.    *Martin's Allegations Are Contradicted By the Record*

The main thrust of Martin's argument as set forth in his § 2255 motion is that he was denied effective assistance of counsel because Ostrander said he would prevail on the motion to suppress and the case would be dismissed.    Martin pointed to three pieces of evidence in support of his contention.    First, Martin stated that Ostrander advised him to reject the original plea deal because "the search warrant was unsigned, [and], therefore, it was unenforceable."    Second, Martin claimed that Ostrander advised him to "withdraw his guilty plea because he will get the case thrown out of court with a Motion to Suppress."    Third, three individuals attested that Martin told them that Ostrander advised Martin that "no signature . . . means no case."

10

Other portions of the § 2255 motion, however, contradict Martin's contention that Ostrander guaranteed a win with respect to the motion to suppress. Elsewhere in Martin's *pro se* § 2255 motion, Martin stated that Ostrander merely "painted a picture" of successfully challenging the unsigned warrant. And contrary to Martin's allegations of a promised win, his § 2255 motion explicitly states that Ostrander simply advised Martin that he "could" win the motion to suppress. Similarly, the affidavits Martin attached to his § 2255 motion likewise support the notion that Ostrander told Martin that there was a *chance* that he would prevail, not that he *would* prevail. All three affiants attested that Ostrander told them, "We *could* win this case, due to the lack of a signature on the warrant . . . ." And each of the three affiants recounts that Martin described listening to "the advice and suggestions" of Ostrander. These statements show that, while talking strategy with his client, Ostrander stated that it was possible, but not certain, that Martin would prevail on the motion to suppress.

Other portions of the record similarly contradict Martin's claim to the extent that it may liberally be construed to suggest that Ostrander guaranteed a win on the motion to suppress. Approximately one week after the district court's denial of the motion to suppress, the court held a change-of-plea hearing during which it questioned Martin about Ostrander's representation. During the questioning, Martin confirmed that Ostrander had done "everything that [Martin] asked him to

11

do in [the] case" and that Ostrander had not performed in an unsatisfactory manner. Martin even indicated that he was "fully satisfied with the advice and the representation [he had] received in [the] case." By this point, Martin knew that Ostrander had lost the motion to suppress. So it would have been appropriate, at this point, for Martin to complain that Ostrander had guaranteed a win on the motion to suppress if he believed that Ostrander had in fact done so. Martin made no such complaint and instead confirmed his satisfaction with Ostrander's representation. We have recognized "a strong presumption that the statements made during the colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

To the extent that Martin's *pro se* § 2255 motion can be read to complain that Ostrander guaranteed the dismissal of Martin's case, Martin's own words and those whose affidavits he filed affirmatively contradict Martin's claim. Because the district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, *Aron*, 291 F.3d at 715, we conclude that the district court did not abuse its considerable discretion in declining to hold a § 2255(b) evidentiary hearing under the circumstances.

**B.**    *The Record Conclusively Shows that Martin is Entitled to No Relief*

Since the record, even when viewed in the light most favorable to Martin, shows that Ostrander, at most, recommended proceeding with the suppression

12

motion but did not guarantee dismissal of the case, we find that the district court did not err in declining to hold an evidentiary hearing because the record conclusively shows that Martin is entitled to no relief. Martin could not prevail on his *Strickland* claim because he cannot establish deficient performance by Ostrander.

During plea negotiations, defendants are "entitled to the effective assistance of competent counsel." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citation omitted). Accordingly, the well-known two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Under *Strickland*, in order to make a successful claim of ineffective assistance of counsel, a defendant must show that (1) his counsel's "performance was deficient" and (2) his counsel's "deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

To establish deficient performance by defense counsel, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Review of counsel's conduct is highly deferential; there is a strong presumption that counsel's performance falls within the "wide range" of reasonable professional competence. *Id.* at 689. The defendant bears the burden of showing "that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

To demonstrate the prejudice prong of *Strickland,* the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability equates to "a probability sufficient to undermine confidence in the outcome." *Id.* To establish *Strickland* prejudice in the context of a plea bargain, the defendant must show the outcome of the plea process would have been different with competent advice. *See Lafler*, 566 U.S. at 164.

Our decision in *Smith v. Singletary*, 170 F.3d 1051 (11th Cir. 1999), leads us to the conclusion that Martin is unable to establish the deficient-performance prong of *Strickland*. In *Smith*, a criminal defendant was offered a plea bargain in which the state offered not to seek a habitual-offender enhancement for sentencing purposes. *Id.* at 1052-53. After discussing the plea offer with counsel, the defendant declined and went to trial. *Id.* at 1053. A jury later convicted the defendant, and the court enhanced his sentence, sentencing him to thirty years, because it found him to be a habitual violent felony offender based on an out-of-state conviction. *Id.*

After exhausting his state remedies, the criminal defendant filed a motion pursuant to 28 U.S.C. § 2254, alleging that he was entitled to relief because he

14

received ineffective assistance of counsel. *Id*. The defendant contended that he rejected the plea offer, which would have resulted in a lesser sentence, because his trial counsel told him that if he were found to be guilty, he would not be subject to an enhanced sentence. *Id.* Counsel assured him that his out-of-state conviction could not serve as a predicate offense under Florida's habitual offender law and that his maximum sentence, if convicted, would be seventeen years. *Id.* The district court denied the § 2254 petition without an evidentiary hearing and the defendant appealed. *Id.*

This Court affirmed. Even though we accepted that counsel gave the defendant incorrect legal advice concerning Florida's habitual offender law, we concluded that he could not show that counsel's performance was deficient under *Strickland. Id.* at 1054-56. We noted that "[i]gnorance of well-defined legal principles is nearly inexcusable" but also acknowledged the universally recognized rule that an "attorney is not liable for an error of judgment on an unsettled proposition of law." *Id.* at 1054 (citations and internal quotation marks omitted). Ultimately, we determined, when counsel evaluated the plea offer, the relevant statute had been effective less than eighteen months and no appellate court had decided the habitual-violent-felony-offender issue. *Id.* at 1055. Put simply, the law was not settled as to whether out-of-state convictions could serve as predicate offenses under Florida's habitual offender law.

15

As a result, we concluded that counsel's advice did not fall below the objective standard of reasonableness. *Id.* at 1054-55. While we recognized that many reasonable attorneys would not have interpreted the relevant Florida law as defense counsel did, relief could be granted only if no reasonable attorney in the circumstances would have interpreted as defense counsel did. *Id.* Since we could not find that no reasonable attorney would have reached defense counsel's legal conclusion, defense counsel's performance was not deficient. *Id.* at 1055-56. And because the record conclusively established that fact, we affirmed the denial of the § 2254 petition without an evidentiary hearing. *Id.* at 1056.

Here, at the time Ostrander advised Martin to pursue the motion to suppress, the law in Florida regarding the enforceability of an unsigned search warrant was not clear. Indeed, the district court noted when denying the motion to suppress, "A number of lower courts have examined the issue of whether an unsigned search warrant is 'issued' within the meaning of the Fourth Amendment with varying results, and this Circuit is silent as to the effect of an unsigned warrant."

It was reasonable for Ostrander to pursue the motion to suppress because no controlling authority had addressed whether a search conducted pursuant to an unsigned search warrant violated the Fourth Amendment's warrant requirement. So while Ostrander's advice to proceed on the motion to suppress based on the unsigned warrant turned out to be wrong, based on our holding in *Smith*, it did not

16

fall below the objective standard of reasonableness. *Smith*, 170 F.3d at 1054-55. And as in *Smith*,[3] because the record here conclusively establishes that Ostrander's performance was not deficient, an evidentiary hearing was not necessary. For this reason, we conclude that the district court did not err when it denied Martin's § 2255 petition without holding an evidentiary hearing.

## V.

The district court did not err when it declined to hold an evidentiary hearing on Martin's § 2255 motion. We therefore affirm the denial of the petition.

**AFFIRMED.**

---

[3] While Martin relies on *Lafler* to support his position that Ostrander rendered ineffective assistance so he is entitled to relief under *Strickland*, *Smith* is not contrary to *Lafler*. In *Lafler*, the parties conceded that counsel's performance was deficient when he erroneously advised the defendant to reject a plea offer on the grounds that he could not be convicted at trial. *See Lafler*, 566 U.S. at 174. As a result, the Supreme Court found it unnecessary to decide the issue of deficient performance. *Id.* at 163, 174. The Court likewise concluded that the petitioner had demonstrated prejudice. In *Smith*, however, like in Martin's case, we directly considered the issue of performance because the government did not concede it. When we did so, as in Martin's case, we concluded that the petitioner had not met his burden to show deficient performance. Because Lafler met both prongs of *Strickland* and neither Smith nor Martin did, *Lafler* is not instructive here.